FILED

2019 Dec-17  PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **In re:** | ) |
| | ) |
| **SUBPOENA ON HIBBETT SPORTS, INC., a** | ) |
| **non-party in a pending civil action before the** | ) |
| **United States District Court for the Eastern** | ) **MISC NO. _____** |
| **District of Pennsylvania entitled** *LONTEX* | ) |
| *CORPORATION V. NIKE, INC.*, **Case No.** | ) |
| **2:18-cv-05623-MMB** | ) |
| | ) |

### NON-PARTIES HIBBETT SPORTS, INC. AND HIBBETT SPORTING GOODS, INC.'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

**COME NOW,** non-parties Hibbett Sports, Inc. ("Hibbett Sports") and Hibbett Sporting Goods, Inc. ("Hibbett," and together with Hibbett Sports, "Movants"), by and through their undersigned counsel, and, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure (the "Rules"), hereby move this Court (this "Motion") to quash the *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action* dated December 2, 2019 (the "Subpoena")[1] (a copy of the Subpoena is attached hereto as **Exhibit A**) directed to Hibbett Sports in *Lontex Corporation v. Nike, Inc.*, Case No. 2:18-cv-05623-MMB (the "Underlying Litigation"), pending in the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania Court"), or, in the alternative, to enter a protective order as set forth herein.  In support of this Motion, Movants rely on the Affidavit of David Benck (the "Benck Aff.") attached hereto as **Exhibit B,** and state as follows:

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Subpoena.

## INTRODUCTION

Lontex Corporation ("Lontex"), the plaintiff in the Underlying Litigation, subpoenaed Hibbett Sports for the production of documents and electronically stored information (the "Document Requests") related to Hibbett's purchase from defendant Nike, Inc. ("Nike") of certain Accused Products and containing Accused Terms.  Hibbett Sports is a holding company for Hibbett and has no records or information responsive to the Subpoena.  However, to the extent Lontex seeks documents from Hibbett, the Subpoena is objectionable and should be quashed. First, the Subpoena requires Hibbett to comply beyond the 100-mile geographical limitation specified in Rule 45(c).  Second, the Subpoena imposes undue burden and expense on Hibbett, in violation of Rule 45(d)(3)(A)(iv).  Among other things, the Document Requests contain no time limitation and therefore purport to request documents from Hibbett for the life of its relationship with Nike, which would require Hibbett, a non-party, to cull through decades' worth documents. Further, the Document Requests request documents and information that Nike, a party to the Underlying Litigation and a less burdensome source than Hibbett, would have.  Such an effort is an improper use of discovery.   Accordingly, Hibbett requests that this Court quash the Subpoena and relieve Hibbett of any obligation to comply with said Subpoena.  In the alternative, Hibbett requests that this Court enter a protective order shifting the costs of compliance to Lontex and limiting the scope of the Subpoena.

## JURISDICTION AND VENUE

1.      Hibbett is a Delaware corporation with its principal address located at 2700 Milan Parkway, Birmingham, Alabama 35211.  Hibbett is wholly owned by Hibbett Sports, a holding company with no assets other than Hibbett.  Hibbett Sports has no records or information regarding Hibbett's relationship with Nike.  *See* Benck Aff., ¶ 3.

2.      All documents and files that are the subject of the Subpoena are stored either electronically or at Hibbett's headquarters in Birmingham, Alabama.  *See id.*, ¶ 4.

3.      Pursuant to Rule 45(c), "[a] subpoena may command production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transactions business in person."  Fed. R. Civ. P. 45(c)(2)(A).  Accordingly, the place for compliance with any subpoena directed to Hibbett must be within 100 miles of Birmingham, Alabama, regardless of the place for compliance listed in the subpoena.

4.      Pursuant to Rule 45(d)(3)(A) and (B), the "district court for the district where compliance is required [must or may] quash or modify a subpoena[.]"  The Advisory Committee Notes to Rule 45 state that "[t]o protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c)."  *See* Fed. R. Civ. P. 45, Advisory Comm. Notes.  Accordingly, the Northern District of Alabama is "the district where compliance is required."  Therefore, venue is proper in this Court, and this Court has jurisdiction pursuant to Rule 45(c) and (d).

## RELEVANT FACTUAL BACKGROUND

5.      Hibbett is a sporting goods company.  Nike has been a supplier to Hibbett for decades.  *See id.*, ¶ 5.

6.      Lontex and Nike are parties to the Underlying Litigation, pending in the Pennsylvania Court.  Hibbett is not a party to the Underlying Litigation.  *See id.*, ¶ 6.

7.      On December 3, 2019, Lontex served the Subpoena on Hibbett.  *See id.*, ¶ 7.

8.      The Pennsylvania Court, through attorney Craig Crockett, issued the Subpoena, and the Subpoena commands Hibbett to produce certain documents at the offices of Lontex's counsel in Washington, D.C. on December 23, 2019.  *See* Subpoena.

9.      As set forth on pages 5 and 6 of Attachment A to the Subpoena, Lontex has

demanded that Hibbett produce documents that fall within ten (10) categories related to Hibbett's

purchase from Nike of the Accused Products and sale of the same, with no time period limitation.

**Memorandum of Law**

A.      **This Motion is Properly Before this Court.**

10.      As a threshold matter, this Court has jurisdiction to quash the Subpoena. Rule

45(d)(3)(A) provides as follows:

> On a timely motion, the court for the district where compliance is required must
> quash or modify a subpoena that:
>
> (i)      fails to allow a reasonable time to comply;
>
> (ii)      requires a person to comply beyond the geographical limits specified in rule
> 45(c);
>
> (iii)      requires disclosure of privileged or other protected matter, if no exception
> or waiver applies; or
>
> (iv)      subjects a person to undue burden.

Rule 45(c)(2)(A) states that the place for compliance with a subpoena for the production of

documents must be limited to "a place within 100 miles of where the person resides, is employed,

or regularly transacts business in person."

11.      Hibbett's principal place of business is in Birmingham, Alabama, and its records

are maintained there, not in the District of Columbia, the district in which the Subpoena specifies

that the documents shall be produced.  Accordingly, under Rule 45(c), Hibbett cannot be required

to comply with the Subpoena outside of 100 miles of its principal place of business in Birmingham,

Alabama.  *See Merlin Petroleum Co. v. Sarabia*, No. 8:16-cv-1000-T-30TBM, 2016 WL 9244728,

*1 (M.D. Fla. Aug. 4, 2016) (quashing subpoena calling for production of documents outside of

100 miles of subpoenaed entity's principal place of business).  This Court therefore has jurisdiction

to quash the Subpoena pursuant to Rule 45(d), as it is the court in which "compliance is required."

12.     The comments issued by the Advisory Committee for the Federal Rules of Civil

Procedure underscore the Committee's intent to geographically limit the venue for compliance

with a subpoena.  The comments to Rule 45(d) state that it was revised "to take account of the

addition of Rule 45(c) to specify where compliance is required"—*i.e.*, within 100 miles of where

a subpoenaed person resides or regularly conducts business in person.  Furthermore, the comment

to subsection (f) states that "subpoena-related motions and applications are to be made to the court

where compliance is required <u>under Rule 45(c)</u>" (emphasis added).  The comment also states that

"[t]o protect local nonparties, local resolution of disputes about subpoenas is assured by the

limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the

court in which compliance is required under Rule 45(c)."

13.     "'The Committee's reasoning is evident: local nonparties should be burdened as

little as practicable by litigation in which they are not involved, and local resolution of the motion

will typically impose a lighter burden.'"  *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D.

405, 407–08 (N.D. Ala. 2014).  It is apparent by the plain language of Rule 45 and its

accompanying comments that the "court in which compliance is required" under the Subpoena is

the court within 100 miles of Hibbett's principal place of business—*i.e.*, this Court.  Accordingly,

under Rule 45(d), this Court has jurisdiction to consider this Motion and quash the Subpoena.

**B.      The Subpoena Must Be Quashed Because It Requires Compliance Beyond the Geographical Limitation Set in Rule 45(c).**

14.     Rule 45(c)(2)(A) permits a subpoena to command "production of documents,

electronically stored information, or tangible things at a place within 100 miles of where the person

resides, is employed, or regularly transacts business in person."  Rule 45(d)(3)(A) provides:

On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

15.     The Subpoena commands Hibbett to produce documents in Washington, D.C., outside of the 100 mile limitation set by Rule 45(c).  Hibbett maintains its headquarters in Birmingham, Alabama, where its files and documents are stored.    Benck Aff., ¶¶ 3–4. Accordingly, the Court must quash or modify the Subpoena for this reason alone.

### C.     The Subpoena Should Be Quashed Because It Subjects Hibbett, a Non-Party, to Undue Burden.

16.     Rule 45(d)(3)(A)(iv) provides that the court must quash or modify a subpoena that "subjects a person to undue burden."  Rule 45(d)(1) further provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

17.     Under Rule 26(b)(1), the scope of discovery is as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

18.     A court "must limit the . . . extent of discovery . . . if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]

Fed. R. Civ. P. 26(b)(2)(C)(i).

19.     Where "[m]aterials . . . are as readily available from [a party] as they are from non-parties," a litigant may not seek documents by means of a third party subpoena "[u]ntil [it] has exhausted its efforts to seek production of these types of materials from [a party to the litigation]."

*Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 395 (D. Colo. 1998); *see also U.S. v. Crumb*, No. 15-655-WS-N, 2016 WL 6997122, at *3 (S.D. Ala. Oct. 4, 2016) (quashing non-party subpoena as cumulative and duplicative because subpoenaed documents had been requested from and were in control of party to the litigation); *Countryman v. Community Link Fed. Credit Union*, No. 1:11-CV-136, 2012 WL 1143572, at *5 (N.D. Ind. April 3, 2012) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents."). Upon objection, the "requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation[.]" *Virginia Dept. of Corrections v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).

20.     Thus, the scope of discovery "must be limited" when discovery is sought from nonparties. *See id.* Accordingly, "[a] more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Id.* (quoting Fed. R. Civ. P. 45(d)(3)A)(iv)). The "ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Id.*

21.     "[W]hen a request for discovery is overly broad on its face or when relevance is not readily apparent, the party seeking the discovery has the burden to show the relevance of the request." *Spacecon Speciality Contractors, LLC v. Bensinger*, 09-cv-02080-REB-KLM, 2010 WL 3927783, at *2 (D. Colo. Oct. 1, 2010). Courts have found that where the information sought in the subpoena is readily available through other means, the party serving the subpoena has failed to take the requisite "reasonable steps" to avoid imposing undue burden on the nonparty served with the subpoena. *See Ballard v. Ill. Cent. R.R. (In re Deposition Subpoena served upon James*

*W. Ballard)*, Civil Action No. 2:05-mc-1870-RDP, 2:05-mc-2491-RDP, 2:05-mc-2614-RDP, 2:05-mc-2615-RDP, 2006 U.S. Dist. LEXIS 51311, at *8 (N.D. Ala. Mar. 9, 2006) ("Accordingly, because the materials sought by the subpoena are readily accessible to ICRR through means other than a non-party subpoena, the court finds that ICRR has not shown good cause why the subpoena should be enforced, nor has it taken 'reasonable steps to avoid imposing undue burden or expense" to Ballard as required by Rule 45(c)(1)).'"); *see also Jordan v. Comm'r, Miss. Dep't of Corr.*, No. 17-12948, 2018 U.S. App. LEXIS 32630, at *18 (11th Cir. Nov. 19, 2018) (affirming district court's granting of a motion to quash subpoena, in part because the information sought was "readily available to the public").

22.     The Subpoena at issue is overbroad on its face.  As an initial matter, there is no time limitation for the documents and information requested in the Subpoena.  Nike has supplied products to Hibbett for decades, and therefore Hibbett's records regarding Nike are voluminous. Further, the Subpoena requires Hibbett to search and produce its records and information related to a) the Accused Term, which is defined as the term "Cool Compression" and "any similar variation thereof"; and b) the Accused Products, which are defined as forty-nine (49) of Nike's product numbers and any other Nike product that includes one of at least ten (10) different words or phrases in the product name or description, although the exact number of words and phrases is unknown because the Subpoena states that it includes "any other variation of the term 'cool' within three words of 'compression[.]'"  *See* Subpoena, Attachment A, pp. 1–2, ¶¶ 5–6.  The inclusion of "variations" in the definitions of these terms is broad and ambiguous, and Hibbett would have to guess what Lontex meant by such definitions.

23.     The estimated time and expense for completing this search is significant.  *See* Benck Aff., ¶¶ 8–9.  Additionally, Hibbett believes that Nike, a party to the Underlying Litigation,

is in possession of most, if not all, of the documents and information sought, to the extent they exist. *Id.* at ¶ 4.

24.     The Subpoena requires Hibbett to produce the following categories of documents and information with respect to the forty-nine (49) Nike product numbers and other Nike products that include one of at least ten (10) different words or phrases in the product name or description:

    a.  Documents sufficient to show all sales volumes and dollar amounts for the Accused Products, including sales by product number, SKU, product name, year, and state.

    b.  Documents sufficient to show all sales volumes and dollar amounts for the Accused Products sold through each sales channel, including your online store.

    c.  Representative samples of each hangtag (including any tagging, sticker or marking placed on hangtags), label, package, advertisement, online listing, invoice, point of purchase display, order confirmation, and promotional material for the Accused Product, including from online purchases.

    d.  Documents sufficient to show each type of advertisement and promotional material (e.g., print, radio, television, brochures, catalogs, flyers, press releases, website pages, website banners, social media, in-store displays, point-of-sale promotional items) displaying any Accused Term or Accused Products.

    e.  All communications with you and Nike that discussed ceasing, altering or modifying usage of the term "Cool Compression."

    f.  All communications with you and Nike that discussed ceasing, altering or modifying usage of the Accused Term.

    g.  All communications referring to Lontex.

    h.  All reference materials you referenced when you ordered any of the Accused Products, for example, Nike product catalogs.

    i.  Documents sufficient to identify all persons who ordered any of the Accused Products for you, including name and title.

    j.  All reference materials, sales guides or sales materials provided to your stores or store personnel concerning one or more of the Accused Products, including tech sheets, modules, technical information, and all other Nike reference materials such as were available on sku.nike.net or Nike's Sports Knowledge Underground portal, as well as any training materials for personnel regarding how to discuss the Accused Products with customers.

25.     As set forth in the Benck Affidavit, to completely respond to each of the foregoing requests, Hibbett would be required to divert at least twenty-seven (27) employees from their daily business responsibilities to have them search through tens of thousands of files, spanning a decades-long relationship.  Benck Aff., ¶ 8.  The time and expense required to comply with the Subpoena is estimated to take weeks, if not months, and potentially cost tens of thousands of dollars.  *Id.*., ¶ 9.  Finally, given that the holiday season is the busiest time of the year for Hibbett, such research could not begin until January 6, 2020.  *Id.*

26.     Under these facts, the Court should find that the undue burden placed on Hibbett in complying with the Subpoena outweighs Lontex's supposed need for the information in the Underlying Litigation, particularly when Lontex can request that same information from party Nike.

**D.     If the Court Orders Hibbett to Comply with the Subpoena, the Court Should Require Lontex to Bear the Significant Costs of Production.**

27.     Rule 45(d)(2)(B)(ii) mandates that when a district court orders compliance with a subpoena over an objection, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  "[W]hen discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party.  If so, the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'"  *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013); *see also Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001) (concluding that cost-shifting is mandatory under Rule 45(d)(2)(B)(ii) upon finding cost of compliance "significant," and finding that $9,000 may be sufficiently significant to justify cost-shifting).

28.     Here, the cost of compliance with the Subpoena will be significant.   Hibbett estimates the cost of researching and producing the documents will be tens of thousands of dollars, and that complete compliance with the Subpoena will potentially take months of searching Hibbett's files by employees who are diverted from their regular job responsibilities.   Benck Aff., ¶¶ 8–9.   Accordingly, if the Court orders compliance, the Court must shift the significant costs of compliance onto Lontex.

## E.     If the Court Orders Hibbett to Comply with the Subpoena, the Court Should Limit the Subpoena.

29.     Rule 26(c)(1) permits district courts to protect a responding party from discovery by, among other things, "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."   As discussed above, Lontex can request much of the documents and information demanded in the Subpoena from party Nike.   Specifically, Nike should have the documents and information responsive to the Document Requests listed above in paragraph 19(a) through (f), (h), and (j).   To the extent Nike does not have information on the Document Requests listed above in (g) and (i) (all communications referring to Lontex and documents identifying the persons who ordered the Accused Products, respectively), then the Subpoena should be limited to require Hibbett to only respond to those two requests for a specified, limited time period.   Finally, Lontex should be required to modify the defined terms in the Subpoena to, among other things, not include vague and ambiguous "variations."

WHEREFORE, non-party Movants respectfully request that this Court:

a) Quash the Subpoena in its entirety, or

b) In the alternative, if the Court orders compliance with the Subpoena, i) require Lontex to pay for the costs of compliance that will be incurred by Hibbett, and ii) limit the Document Requests as set forth in paragraph 29 above, and

(c) grant such further relief as this Court deems just and proper.

Dated this the 17th day of December, 2019.

/s/ D. Christopher Carson
D. Christopher Carson
Hanna Lahr

*Attorneys for Hibbett Sports, Inc. and*
*Hibbett Sporting Goods, Inc.*

**OF COUNSEL:**
BURR & FORMAN LLP
420 20th Street North, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Email: ccarson@burr.com
          hlahr@burr.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2019, I served the foregoing via certified mail, return receipt requested or via electronic mail, as indicated, on the following:

**Certified Mail, Return Receipt Requested**

Lontex Corporation
c/o Efraim Nathan
8 Dekalb St, Fl 4
Norristown, PA 19401

Nike, Inc.
c/o United Agent Group Inc., its Registered Agent
6 Office Park Circle #100
Mountain Brook, AL 35223

**Email**

Craig Crockett
Troutman Sanders LLP
Three Embarcadero Center, Suite 800
San Francisco, CA 94111
craig.crockett@troutman.com

Ben L. Wagner
Troutman Sanders LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130
ben.wagner@troutman.com

Michael B. Dubin
Semanoff, Ormsby, Greenberg & Torchia, LLC
2617 Huntingdon Valley, PA 19006
mdubin@sogtlaw.com

Katherine Harihar
Troutman Sanders LLP
875 Third Ave
New York, NY 10022
katherine.harihar@troutman.com

Darius C. Gambino
Ben C. Fabens-Lassen
DLA Piper LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
darius.gambino@dlapiper.com
ben.fabens-lassen@dlapiper.com

Gina L. Durham
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
gina.durham@dlapiper.com

Frank W. Ryan
Andrew J. Peck
Marc E. Miller
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
frank.ryan@dlapiper.com
andrew.peck@dlapiper.com
marc.miller@dlapiper.com

/s/ D. Christopher Carson
OF COUNSEL

# Exhibit A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| Lontex Corporation | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  2:18-cv-05623-MMB |
| Nike, Inc. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                        Hibbett Sports, Inc.
c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:           See Attachment A

| Place: Troutman Sanders LLP<br>        401 9th Street, NW, Suite 1000<br>        Washington, D.C. 20004 | Date and Time:<br><br>          12/23/2019 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    .. The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      12/02/2019

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | *[signature]* |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Lontex Corporation
_____ , who issues or requests this subpoena, are:
Craig Crockett; Three Embarcadero Center, Suite 800,San Francisco, California, 94111; craig.crockett@troutman.com; 415-477-5724

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:18-cv-05623-MMB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

The following terms and phrases are defined and used herein as follows:

1.      The terms "HIBBETT," "YOU," or "YOUR," refer to HIBBETT SPORTS, INC.
and its subsidiaries, divisions, departments, affiliates, and any officers, directors, agents,
employees, or consultants.

2.      The term "NIKE" refers to Defendant Nike, Inc. and its predecessors, successors,
subsidiaries, divisions, departments, affiliates, and any and all past or present officers, directors,
agents, employees, consultants, experts, attorneys, parents, subsidiaries, and other persons
appearing or purporting to act on its behalf.

3.      The term "LONTEX" refers to Plaintiff Lontex Corporation.

4.      The term "COOL COMPRESSION Mark" refers to LONTEX's marks:

U.S. Reg. No. 3,416,053 (COOL COMPRESSION word mark);



U.S. Reg. No. 3,416,236 (                    ); and

U.S. Reg. No. 3,611,406 (COOL COMPRESSION word mark);

whether standard character, stylized, or design mark.

5.      The term "ACCUSED TERM," refers to NIKE's use of "Cool Compression" and
any similar variation thereof.

6.      The term "ACCUSED PRODUCTS" refers to (1) NIKE's product numbers:
642350, 642351, 642352, 642354, 679444, 683134, 687837, 687839, 687840, 688614, 703084,
703086, 703088, 703092, 703094, 703096, 703098, 715907, 719903, 724354, 724782, 724785,
726460, 726461, 726462, 726464, 726465, 728044, 728047, 728048, 728049, 728343, 728357,

1

728358, 728359, 728361, 728363, 729269, 729273, 742959, 742961, 804337, 804655, 828642, 833544, 837174, 837181, 844306, 848199; (2) any other NIKE product that includes in the product name or description either "Cool Compression," "Cool Comp," "COOLCOMPRESSION," "cool-comp," "coolcomp," "cool-compression," or any other variation of the term "cool" within three words of "compression") (e.g. "Cool 9" Compression," "Cool ½ Sleeve Compression," "Cool HBR Comp")) (or "comp").

      7.     The terms "PERSON" or "PERSONS" refer to any natural person, agent, licensee, firm, association, organization, partnership, business, trust, corporation, joint venture and all other forms of legal entities.

      8.     The terms "DOCUMENT" or "DOCUMENTS" refer to the full scope of documents and things discoverable under the Federal Rules of Civil Procedure and is used herein in its broadest sense to include, anything in which there is portrayed or contained, or from which can be retrieved, any facts, information, or data, including, without limitation: (i) all writings of every kind, including, but not limited to, letters, telegrams, memoranda, reports, studies, calendar and diary entries, pamphlets, notes, charts, drawings, graphs, tabulations, analyses, statistical or other informational accumulations, advertisements, portfolios, file folders or jackets, folder covers, and any kind of records of meetings and conversations (also including, without limitation, audio recordings), (ii) photographs and film impressions, digital images captured in any media, moving pictures, (iii) all ESI as defined below, (iv) data accessible via the Internet (including, but not limited to, http, html, xml, java, or Adobe Flash web pages and/or web data), or stored on magnetic tapes or on any other data storage media, (v) sound or mechanical reproductions or recordings, and (vi) copies of documents that are not identical to the duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached

2

thereto), whether or not the originals are in YOUR possession, custody, or control. A draft, alternate version, or non-identical copy, including any copy on which any mark, alteration, writing, attachment, or any other change from the original appears, is a separate document within the meaning of these terms.

9.     The term "ESI" refers to data recorded or stored on or in main frame computers, network file systems, servers (including web servers), workstations, computer databases, personal computers (whether or not connected to a network), laptop computers, telephones (including, but not limited to, cell phones and smart phones), zip™ drives, flash memory media, including, but not limited to, thumb drives, memory sticks, and flash memory cards, external drives, removable drives, diskettes, optical media, including, but not limited to, CDs, DVDs, and magneto-optical discs, personal digital assistants ("PDAs," e.g., Palm™, Blackberry™, and iPhone™ devices, and the like), digital photographs, digital movies, videotapes, audio tapes, and similar media. This includes, by way of example and not limitation, CAD, CAM, and similar drawings, digital photographs and movies, electronic mail (also referred to herein as "e-mail") (and attachments thereto), short message service ("SMS") messages, multimedia messaging service ("MMS") messages (and attachments thereto), metadata, object code, presentations, software, source code, spreadsheets, voice mail, word processor files, Internet webpages, and other electronically stored data compilations. All versions and drafts are to be produced as separate items.

10.     The terms "COMMUNICATION" or "COMMUNICATIONS" refer to any oral, written or electronically recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, without limitation, electronic mail, instant messages, correspondence, conversations, telephone calls, dialogues, discussions, interviews, consultations,

3

agreements and any other understandings between or among two or more persons or any document that recorded or reflected any such communication.

11.    The term "TANGIBLE THINGS" refers to the full scope of documents and things discoverable under the Federal Rules of Civil Procedure.

12.    The term "IDENTIFY" when referring to a PERSON means to provide an identification sufficient to notice a deposition of such PERSON and to serve such PERSON with process to require their attendance at a place or examination and must include, without limitation, their full name, present or last-known address, present or last-known telephone number, present or last-known business affiliation and address, and business telephone number.

13.    The term "IDENTIFY" when referring to a DOCUMENT, shall mean to provide at least the following information: (a) type of DOCUMENT; (b) general subject matter; (c) date of the document; and (d) author(s), address(es), and recipient(s) of the document.

14.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15.    The use of the singular form of any word includes the plural and vice versa.

16.    Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most appropriate.

17.    In the event that HIBBETT refuses to answer a request on the basis that it is privileged, subject to work-product immunity, or otherwise excludable from discovery, HIBBETT is requested to state the following:

(a)    the nature of the privilege, including work product, which is being claimed;

(b)    the type of information, DOCUMENT, e.g., letter or memorandum;

(c)     the general subject matter of the DOCUMENT;

(d)     the date of the DOCUMENT; and

(e)     such other information as is sufficient to identify the DOCUMENT for a

subpoena *duces tecum*, including, where appropriate, the author of the DOCUMENT, the

addressees of the DOCUMENT, and any other recipients shown in the DOCUMENT, and where

not apparent, the relationship of the author, addressees, and recipients to each other.

18.     Any purportedly privileged or discovery-immune information or DOCUMENT

that contains matter that is not privileged or immune from discovery must be produced with the

purportedly privileged or discovery-immune portion redacted.

19.     Copies of the parties' stipulated protective order and ESI order are attached as

Exhibits A and B, respectively.  All DOCUMENTS and ESI are requested to be produced in

accordance with those stipulated orders.

## DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION NO. 1:

DOCUMENTS sufficient to show all sales volumes and dollar amounts for the

ACCUSED PRODUCTS, including sales by product number, SKU, product name, year, and

state.

### REQUEST FOR PRODUCTION NO. 2:

DOCUMENTS sufficient to show all sales volumes and dollar amounts for the

ACCUSED PRODUCTS sold through each sales channel, including YOUR online store.

### REQUEST FOR PRODUCTION NO. 3:

Representative samples of each hangtag (including any tagging, sticker or marking placed

on hangtags), label, package, advertisement, online listing, invoice, point of purchase display,

order confirmation, and promotional material for the ACCUSED PRODUCT, including from online purchases.

**REQUEST FOR PRODUCTION NO. 4:**

DOCUMENTS sufficient to show each type of advertisement and promotional material (e.g., print, radio, television, brochures, catalogs, flyers, press releases, website pages, website banners, social media, in-store displays, point-of-sale promotional items) displaying any ACCUSED TERM or ACCUSED PRODUCTS.

**REQUEST FOR PRODUCTION NO. 5:**

All COMMUNICATIONS with YOU and NIKE that discussed ceasing, altering or modifying usage of the term "Cool Compression."

**REQUEST FOR PRODUCTION NO. 6:**

All COMMUNICATIONS with YOU and NIKE that discussed ceasing, altering or modifying usage of the ACCUSED TERM.

**REQUEST FOR PRODUCTION NO. 7:**

All COMMUNICATIONS referring to LONTEX.

**REQUEST FOR PRODUCTION NO. 8:**

All reference materials YOU referenced when YOU ordered any of the ACCUSED PRODUCTS, for example, NIKE product catalogs.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to IDENTIFY all persons who ordered any of the ACCUSED PRODUCTS for YOU, including name and title.

**REQUEST FOR PRODUCTION NO. 10:**

All reference materials, sales guides or sales materials provided to YOUR stores or store personnel concerning one or more of the ACCUSED PRODUCTS, including tech sheets, modules, technical information, and all other Nike reference materials such as were available on sku.nike.net or Nike's Sports Knowledge Underground portal, as well as any training materials for personnel regarding how to discuss the ACCUSED PRODUCTS with customers.

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LONTEX CORPORATION

     Plaintiff,

    v.

NIKE, INC.,

     Defendant.

**FILED**

JUL 18 2019

KATE BARKMAN, Clerk
By_____ Dep. Clerk   Civil Action No.  2:18-cv-05623-MMB

## STIPULATED [PROPOSED] PROTECTIVE ORDER

    Based upon agreement of the parties, the Court enters this Confidentiality Order to protect the disclosure of Confidential Material in this Action, including such materials produced by non-parties consistent with Rule 26(c) of the Federal Rules of Civil Procedure and it is **ORDERED:**

    **1.**    **Scope.** All materials produced or adduced in the course of discovery, including initial disclosures, responses to discovery requests, deposition testimony and exhibits, and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information and Confidential – Attorneys' Eyes Only Information as defined below (collectively "Confidential Material"). This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

    **2.**    **Confidential Information.** As used in this Order, "Confidential Information" means information designated as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER"

by the producing party that is to be shielded from public access. Confidential Material shall not include any documents, information, or other material which:

   (a) has been or becomes part of the public domain by publication or otherwise, other than by any unauthorized act or omission on the part of the receiving party (including its agents, experts, or attorneys) or a nonparty alleged to have a duty to maintain such documents, information, or other material as confidential; or

   (b) was both lawfully obtained by and lawfully retained in the possession of the receiving party prior to and apart from this litigation and was not subject to a similar Order or confidential designation; or

   (c) the receiving Party lawfully receives from a nonparty who obtained the same by legal means and without any obligation of confidentiality to the party claiming its confidential nature. For the avoidance of doubt, if a nonparty produces Confidential Material pursuant to a subpoena, it shall remain Confidential Material.

  **3.** **Confidential – Attorneys' Eyes Only Information.** As used in this Order, "Confidential Attorneys' Eyes Only Information" means information designated as "CONFIDENTIAL ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" by the producing party shielded from public access, restricted from any access as defined below that falls within one or more of the following categories: (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) competitive technical information; (e) competitive business information; (f) medical information concerning any individual; (g) personally identifiable information; (h) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (i) personnel or employment records of a person who is

-2-

not a party to the case. Information or documents that are available to the public may not be designated as "Confidential Attorneys' Eyes Only."

    **4.**    **Designation.** The following procedures govern the designation of discovery materials as confidential:

        (a)    A party may designate a document as Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL" on the document or as Confidential – Attorneys' Eyes Only Information by placing or affixing the words "CONFIDENTIAL ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – AEO" on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Material. The markings shall be applied prior to or at the time the documents are produced or disclosed by the designating party. Applying the marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent permitted under this Order. Any copies that are made by the receiving party of any documents so marked shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Material are not required to be marked.

        (b)    The designation of a document as Confidential Information or Confidential – Attorneys' Eyes Only Information is a certification by an attorney or a party that the document contains Confidential Material as defined in this order. Each

- 3 -

party that designates information as Confidential Information or Confidential – Attorneys' Eyes Only Information must take care to limit any such designation to specific material that qualifies under the appropriate standards and only designate those portions that qualify for protection under this Order. Mass, indiscriminate, or routine designations are prohibited.

**5.      Depositions.**

Unless all parties agree on the record at the time the deposition testimony is taken or by later written stipulation of the parties, all deposition testimony taken in this case shall be treated as Confidential Material for an initial twenty-one (21) calendar days after receipt of the final deposition transcript. Within this time period, a party must serve a Notice of Designation to all parties of record as to specific portions of the testimony that are designated Confidential Information or Confidential – Attorneys' Eyes Only Information, and thereafter only those portions identified in the Notice of Designation shall be protected by the terms of this Order. The failure to serve a timely Notice of Designation shall waive any designation of testimony taken in that deposition as Confidential Information or Confidential – Attorneys' Eyes Only Information, unless otherwise ordered by the Court.

**6.      Protection of Confidential Material.**

**(a)      General Protections.** Confidential Material shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, including any appeal thereof, except as provided below.

-4-

**(b)** **Limited Disclosures for Confidential Information.** The following persons shall have access to Confidential Material marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER":

**(1) Outside Counsel.** Outside counsel of record for the parties in this action and employees of outside counsel who have responsibility for the action;

**(2) Parties.** In-house counsel for the parties and senior executive management of corporations, partners of partnerships, and members of limited liability companies of a party;

**(3) The Court and its personnel.** The Court and its personnel or officers of any appellate court to which any appeal may be taken or in which review is sought;

**(4) Court Reporters and Recorders.** Court reporters and recorders, including videographers, engaged for depositions in this action;

**(5) Contractors.** Those persons or entities specifically engaged by Outside Counsel for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents, but only after such persons or entities have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound;

**(6) Consultants and Experts.** Independent consultants or experts, along with their employees who have responsibility for this action, who are engaged by the parties or counsel for the parties to assist in the preparation and trial of this action and who are not (a) current employees, officers, members, directors, or partners of any party, affiliates of any party, or attorneys of any party or its affiliates, (b) absent prior written consent from the opposing party (not to be unreasonably withheld) or court approval to include such person in this subparagraph 6, former employees, officers, members, directors, or partners of any party, affiliates of any party, or attorneys of any party or its affiliates, or (c) absent prior written consent from the opposing party (not to be unreasonably withheld) or court approval to include such person in this subparagraph 6, current employees, officers, members, directors, or partners of any competitors or consultants of such competitors; but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound;

**(7) Witnesses at depositions.** During their depositions, witnesses in this action to whom disclosure is reasonably necessary, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound, copies of which shall be served on all parties. Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Material pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order. Witnesses shall not retain a copy

39436891v1

of documents containing Confidential Material, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts;

**(8) Author or recipient.** The author or recipient of the document (not including a person who is authorized to receive the document in the course of litigation); and

**(9) Others by Consent.** Other persons proposed by the receiving party only by written consent of the producing party, or upon order of the Court, and only on such conditions as may be agreed or ordered.

**(c)    Limited Disclosures for Confidential Attorneys' Eyes Only Information.** The following persons shall have access to Confidential Material marked "CONFIDENTIAL ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER":

**(1)**    The persons described in subparagraphs 6(b)(1), (3)-(6), and (8)(9) above;

**(3)**    The following designated individual who is a California and Oregon licensed attorney for NIKE, Inc.: Kimberly Van Voorhis.

**(4)    Witnesses at Depositions.** Upon agreement of the parties, during their depositions, witnesses in this action to whom disclosure is reasonably necessary, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to Be Bound, copies of which shall be served on all parties. Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Material pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order. Witnesses shall not retain a copy of documents containing Confidential Material, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts.

**(d)    Control of Documents.** Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Material. Outside counsel shall maintain fully legible scanned/digitized copies of the originals of the forms signed by persons acknowledging their obligations under this Order for a period of one (1) year after the termination of the case, with standard backup of the digitized copies.

**(e)    Hosting Received Confidential Material.** Confidential Material produced by a Party shall not be hosted at the location of the receiving Party. Instead, Confidential Material shall be hosted at the location of either outside counsel for the receiving Party or a third-party discovery

- 6 -

vendor. For the avoidance of doubt, for Electronically Stored Information ("ESI"), a receiving Party shall not host the producing Party's ESI Confidential Material on hardware located at the receiving Party. Notwithstanding the foregoing, Confidential Material may be accessed by an employee of a receiving Party if that employee is granted access to the Confidential Material pursuant to this Protective Order.

7.    **Failure to Designate.** A failure to designate a document as Confidential Material does not, standing alone, waive the right to so designate the document; provided, however, that a failure to serve a timely Notice of Designation of deposition testimony as required by this Order, even if inadvertent, waives any protection for deposition testimony. If a party designates a document as Confidential Material after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to ensure that the document is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Material, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential Material.

8.    **Filing of Confidential Material.** This Order does not, by itself, authorize the filing of any document under seal. Without written permission from the designating party, a party may not file in the public record in this action any Confidential Material. Any party wishing to file a document designated as Confidential Material in connection with a motion, brief or other submission to the Court, including as portions of pleadings, motions or other papers that disclose such Confidential Material, shall apply to the Court for the filing of such documents under seal, in accordance with Local Rule 5.1.2(7) and 5.1.5 and this Court's existing rules or order regarding

- 7 -

Protective Orders and Filing of Documents Under Seal. The parties will use their best efforts to minimize such sealing.

The obligation to apply to the Court to file Confidential Material under seal falls on the moving party, regardless of whether the moving party is also the designating party. The filing of such an application to file under seal shall not constitute an acknowledgement by the moving party of, or a waiver of its right to challenge, the appropriateness of any confidentiality designation made by any other designating party. The process for challenging a confidentiality designation is set out in Paragraph 10 of this Order, however; and the receiving party seeking to challenge a confidentiality designation must exhaust that process before raising a challenge to the appropriateness of a designation with this Court. If the moving party's application to file Confidential Material under seal pursuant to Local Rule 5.1.2(7) and 5.1.5 is denied by the Court, the designating party shall have two business days to provide the Court with a written objection to the public filing of the Confidential Material. In the event the designating party does not so object or the Court denies such an objection, the Confidential Material may be filed in the public record pursuant to Local Rule 5.1.2(7) and 5.1.5, unless otherwise instructed by the Court.

9. **No Greater Protection of Specific Documents.** Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.

10. **Challenges by a Party to Designation as Confidential Material.** The designation of any material or document as Confidential Material is subject to challenge by any party at any time. The following procedure shall apply to any such challenge.

- 8 -

     **(a)**    **Meet and Confer.** A party challenging the confidentiality designation must do so in good faith and must begin the process by meeting and conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within five (5) business days following the meet and confer.

     **(b)**    **Judicial Intervention.** A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has met and conferred with the designating party. The burden of persuasion in any such challenge proceeding shall be on the designating party. Until the Court rules on the challenge, all parties shall continue to treat the materials as confidential pursuant to the conditions of its marked designation under the terms of this Order.

    **11.**    **Action by the Court.** Applications to the Court for an order relating to materials or documents designated Confidential Material shall be by motion and in accordance with the Court's existing rules or order regarding Protective Orders and Filing of Documents Under Seal. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

    **12.**    **Use of Confidential Documents or Material at Trial.** Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial or

hearing. A party that intends to present or that anticipates that another party may present Confidential Material at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum without disclosing the Confidential Material. The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.

13.     **Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**

(a)     If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Material, the receiving party must so notify the designating party, in writing, immediately and in no event more than three (3) court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b)     The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Material in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential Material, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive

- 10 -

from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential Material by the other party to this case.

**14.** **Challenges by Members of the Public to Sealing Orders.** A party or interested member of the public has a right to challenge the sealing of particular documents that have been filed under seal, and the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

**15.** **Obligations on Conclusion of Litigation.**

**(a)** **Order Continues in Force.** Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

**(b)** **Obligations at Conclusion of Litigation.** Within seventy (70) calendar days after dismissal or entry of final judgment not subject to further appeal, all Confidential Material under this Order, including copies as defined in paragraph 4(a), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return, which agreement shall not be unreasonably withheld; or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.

**(c)** **Retention of Work Product and an Archival Copy.** Notwithstanding the above requirements to return or destroy documents, counsel may retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Confidential Material. Any such archival copies that

contain or constitute Confidential Material remain subject to this Order. An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose or use Confidential Material.

(d)    **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System.** Filings under seal shall be deleted from the ECF system only upon order of the Court.

16.    **Order Subject to Modification.** This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter, and agreement to this Order shall not prevent or waive any requests for modification.

17.    **No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Material is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

18.    **Persons Bound.** This Order shall take effect when entered and shall be binding upon all counsel of record and the parties' law firms, the parties, and persons made subject to this Order by its terms.

19.    **Challenging Access.** Any party may challenge access to Confidential Material by Witnesses. The following procedure shall apply to any such challenge.

(a)    **Meet and Confer.** A party challenging access to Confidential Material must do so in good faith and must begin the process by meeting and conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief

- 12 -

that the access to Confidential Material should be denied, and must give the party seeking disclosure an opportunity to review the basis and, if disclosure is still sought, to explain their position for the disclosure. The designating party must respond to the challenge within five (5) business days following the meet and confer. The person whose access to Confidential Material is challenged shall not have access to the Confidential Material unless either the parties agree to grant access or the Court so orders.

**(b)     Judicial Intervention.** A party that elects to challenge a person's access to Confidential Material may file and serve a motion that identifies the challenged access and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure. The burden of persuasion in any such challenge shall be on the movant.

**(c)** No party shall use its right to challenge a person's access to Confidential Material to interfere with the ability of the other party to reasonably prepare for trial.

**(d)** All persons whose access was challenged, prior to receiving any Confidential Material, shall acknowledge the terms of this Stipulated Protective Order by executing the "Acknowledgment" appended as Attachment A, copies of which shall be served on all parties.

**20.     Rule 502(d) Order and Procedures.** The production of privileged or work-product protected documents, ESI, or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b) do not apply at all. Nothing contained herein is intended to or shall serve to limit a party's right to

39436891v1

conduct a review of evidence, ESI, or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

(a)     If the receiving party, upon review of the producing party's production locates documents or ESI that appear to be privileged or protected from discovery, it shall promptly notify the producing party, and it shall segregate such material and not further review or disseminate it, until the producing party responds.

(b)     If a producing party produces to a receiving party any document, ESI, or information that the producing party later determines is subject to a claim of privilege or immunity from discovery (including but not limited to attorney-client privilege, work product protection, or immunities created by federal or state statute or regulation), the producing party shall, within 30 days of discovery of the production, give written notice to the receiving party of the producing party's claim of privilege or immunity from discovery.

(c)     Upon receipt of such notice, the receiving party shall immediately (but in no event later than ten days) return or destroy the document or ESI at issue and any and all copies thereof, and shall notify the producing party of such destruction. Even if the receiving party plans to challenge the claim of privilege, it may not retain any copies of the document or ESI at issue. The receiving party also must take reasonable steps to retrieve the document or ESI from all to whom it disclosed the document or ESI before being notified of the claim of privilege.

(d)     If the receiving party believes that the document or ESI in issue is not privileged or protected (for reasons other than the fact that it was produced, which does not provide a basis to challenge the privilege or protection), then the receiving party shall notify the producing party within ten business days of receipt of the producing parties written notice of claim of privilege, and shall set forth in detail the precise grounds upon which the receiving party's position rests.

- 14 -

39436891v1

(e)     If the parties are unable to resolve the matter, either party may present the issue to the Court for resolution. Any document or ESI presented to the court for in camera review shall be filed under seal. The disputed document or ESI is considered and treated as privileged unless and until the Court orders otherwise.

21.     Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

Dated:     July 15, 2019                    TROUTMAN SANDERS LLP

                                            By: /s/ *Ben L. Wagner*
                                            Ben L. Wagner (admitted *pro hac vice*)
                                            ben.wagner@troutman.com
                                            11682 El Camino Real, Suite 400
                                            San Diego, CA  92130-2092
                                            Telephone:  858-509-6000
                                            Facsimile:   858 509 6040

                                            Andrew D. Skale (admitted *pro hac vice*)
                                            adskale@mintz.com
                                            MINTZ LEVIN COHN FERRIS
                                            GLOVSKY AND POPEO PC
                                            3580 Carmel Mountain Road, Suite 300
                                            San Diego, CA 92130
                                            Telephone:  858-314-1500
                                            Facsimile:   858-314-1501

39436891v1

Michael B. Dubin (PA SBN 70681)
SEMANOFF ORMSBY GREENBERG &
TORCHIA, LLC
2617 Huntingdon Pike
Huntingdon Valley, PA 19006

*Attorneys for Plaintiff*
*Lontex Corporation*

Dated:      July 15, 2019                 DLA PIPER LLP (US)

By: /s/ *Gina L. Durham* (with consent)
_____
Gina L. Durham (admitted *pro hac vice*)
555 Mission Street, Suite 2400
San Francisco, CA 94105

Frank W. Ryan (admitted *pro hac vice*)
Marc E. Miller (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 100201

Darius C. Gambino
Ben C. Fabens-Lassen
1650 Mark Street, Suite 5000
Philadelphia, PA 19103

*Attorneys for Defendant NIKE, Inc.*

**Approved and So Ordered this** \_\_ **day of July, 2019.**

**BY THE COURT:**

_____
Honorable Michael M. Baylson

- 16 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LONTEX CORPORATION

        Plaintiff,

    v.

NIKE, INC.,

        Defendant.

Civil Action No.  2:18-cv-05623-MMB

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

The undersigned hereby acknowledges that he/she has read the Confidentiality Order dated _____ in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Eastern District of Pennsylvania in matters relating to the Confidentiality Order and understands that the terms of the Confidentiality Order obligate him/her to use materials designated as Confidential Information or Confidential – Attorneys' Eyes Only Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information or Confidential – Attorneys' Eyes Only Information to any other person, firm or concern.

- 17 -

39436891v1

The undersigned acknowledges that violation of the Confidentiality Order may result in penalties for contempt of court.

NAME: _____

JOB TITLE: _____

EMPLOYER: _____

BUSINESS ADDRESS : _____

_____

39436891v1

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Lontex Corporation

                 Plaintiff,       : CIVIL ACTION

      v.

                                : NO.: 2:18-cv-05623-MMB

Nike, Inc.,

                Defendants.     : *Jury Trial Demanded*

**FILED**

JUL 18 2019

KATE BARKMAN, Clerk
By_____ Dep Clerk

## STIPULATED [PROPOSED] ORDER REGARDING ELECTRONICALLY STORED INFORMATION ("ESI") DISCOVERY

The undersigned counsel on behalf of their respective clients, all parties to the above-captioned action ("Parties"), agree that this stipulated order regarding ESI ("ESI Order") shall govern the discovery of Electronically Stored Information. This ESI Order is intended to provide for effective, efficient, and proportional ESI discovery in accordance with the Federal Rules of Civil Procedure. Nothing in this ESI Order alters either Party's rights, obligations, and responsibilities under the Federal Rules of Civil Procedure.

## I.    DEFINITIONS

    1.    The following terms will have the definitions as outlined:

        a.    "Document" refers to a collection of pages or file(s) constituting a logical single communication of information produced or inspected as a single record pursuant to Federal Rules of Civil Procedure 26 and 34, including hard copy and electronically stored information.

        b.    "Electronically Stored Information" or "ESI" is defined as that term is under the Federal Rules of Civil Procedure and the precedent interpreting it. As provided in Rule 34, electronically stored information stands on an equal footing with discovery of paper documents and the use of the terms "document" and "documents" herein shall be understood to include electronically stored information.

39460613v1

c.      "Custodian" refers to an individual who stores, controls or possesses Documents or ESI.

d.      "Non-Custodial Sources" refers to_shared ESI and Document repositories not necessarily associated with individual Custodian(s). Examples of Non-Custodial Sources may include, but are not limited to, shared file cabinets, shared network drives or fileservers, electronic document management systems, or databases.

e.      "Metadata" refers to: (i) information embedded in or associated with a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File which describes the characteristics, origins, usage or validity of the electronic file or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

f.      "Native Format" means the file structure defined by the original creating application of an electronic document.  This file structure is referred to as the "native format" of the document.

g.      "Load File" is an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load File should also contain data relevant to the individual Documents, including extracted and user-created Metadata as required by Exhibit A.

## II.   <u>SCOPE</u>

1.      The following individuals representing the listed party to the action, will serve as the e-discovery liaison (the "ESI Liaison"), and that such person (a) is or will promptly upon appointment as ESI Liaison for a Party become familiar with all the ESI matters for the Party who

2

appointed him or her, including the party's reasonable efforts to identify electronic systems, Custodians, and Non-Custodial Sources most likely to contain relevant ESI; the technical aspects of the contemplated e-discovery; and to the best of his or her ability, facilitate the preservation, retrieval, and production of each Party's ESI throughout the course of this action, and (b) will, to the best of his or her ability, provide answers to questions to the ESI Liaisons for the other Parties to the action as needed regarding the subjects set forth in subsection (a) of this paragraph:

    a.    Lontex Corporation:

        i.    Name:  Alison Grounds

        ii.    Position: Outside Counsel, Troutman Sanders LLP

        iii.    Contact Information: alison.grounds@troutman.com

    b.    Nike, Inc.

        i.    Name: Andrew Peck

        ii.    Position: Outside Counsel, DLA Piper LLP

        iii.    Contact Information: andrew.peck@dlapiper.com

2.    Disputes may arise regarding the scope, format, and production of ESI, , and the Parties agree that if such issues arise, they will identify the dispute and cooperate in good faith to resolve the issue.  In the event that the Parties are unable to agree upon the proposed solution, the issue will be submitted to the Court for decision.

3.    The Parties shall exchange the following information by a mutually agreeable date, but no later than seven days prior to a party's production of any ESI limited by Custodian or search terms:

    a.    Custodians.  For each Custodian most likely to have discoverable ESI in their possession, custody or control for whom ESI will be produced, the producing party shall disclose the specific ESI sources collected and searched for each Custodian.  The Custodians shall be identified by name, title, connection to the instant litigation, and the type of the information

under his/her control.  Examples of Custodian-specific sources of ESI may include, but are not limited to, ESI stored on 1) individual company-issued or personal devices (e.g, laptops, desktop computers, external hard drives, thumb drives, mobile phones, tablets, etc.); 2) network locations (e.g, email mailboxes, document management systems, network drives); and 3) cloud-based locations (e.g., third party hosted applications such as Gmail.)  The parties agree to make a reasonable effort to identify the specific Custodian ESI sources most likely to contain relevant ESI which may or may not include ESI from the example sources listed herein, depending on the storage habits of the individual Custodian.

        b.      Non Custodial Sources.  For each relevant Non Custodial Source most likely to have discoverable ESI from which ESI will be produced, the producing party shall provide a brief description of the type of information stored in the system and the methodology used to identify potentially relevant ESI (e.g., SQL queries, search terms, etc,) from each system.

        c.      Excluded ESI Sources.  Identification of relevant ESI sources which the producing party believes are not reasonably accessible due to undue cost or burden as defined by Rule 26(b)(2)(B).

        d.      Search Terms.  A list of proposed search terms ("Initial Search Terms"), to the extent a Party plans to rely on the use of search terms to filter ESI and isolate ESI that is potentially responsive prior to review or production including the sources of ESI to which the search terms will be applied.

        4.      The Parties shall exchange hit reports by source for the Initial Search Terms as set forth in Paragraph 3 above, and meet and confer in good faith concerning any requested modifications to any Initial Search Terms.

        5.      The purpose of Paragraphs 3 and 4 is to promote transparency in any culling of

4

ESI and not to create an obligation for the parties to agree to specific search terms or custodians *before* beginning their respective efforts to identify and produce responsive ESI. The parties retain the right to object to the custodians, non-custodial sources, and search terms used by a producing party.

6.   Except as otherwise agreed to by the Parties or ordered by the Court, both ESI and hard copy paper files should be produced in accordance with the Production Format listed in Exhibit A. Each Party shall use good faith efforts to remove duplicate ESI, including without limitation electronic mail, to reduce unnecessary cost of reviewing and producing duplicative ESI, in accordance with the Production Format described in Exhibit A. Files not easily converted to image format, such as Excel files, shall be produced in Native Format, and bates numbered with a page holder as outlined in Exhibit A.

7.   .Responsive ESI shall be produced bearing Bates numbers and designated in conformity with the Stipulated Protective Order.

8.   On-site inspections of ESI under FRCP 34(b) shall not be permitted, except in exceptional circumstances pursuant to court order for good cause.

9.   After receiving production of responsive ESI, a receiving Party for good cause may request production of specifically identified documents in Native Format, whereupon, the parties will meet and confer in good faith concerning whether the producing Party will promptly provide the specifically identified documents in Native Format, associating the same Bates numbers with the Native file version of such documents.

## III.   PRIVILEGE LOG

1.   The obligation to provide a log of privileged or work product materials pursuant to Federal Rule of Civil Procedure 26(b)(5)(A) presumptively shall not apply to:

a.   Communications between a Party and its Outside Counsel;

5

b.     Attorney work product created by Outside Counsel for the Parties;

c.     Internal communications within Outside Counsel for the Parties; and

d.     Documents created on or after the filing of the Complaint in this Action.

2.    The Parties agree that, except as provided herein regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection in an efficient manner. For documents and ESI that have been withheld or redacted as privileged, the withholding or redacting Party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available and to the extent it does not reveal protected content: date, author(s), custodian(s), recipient(s), file type, and subject. In addition, the withholding or redacting Party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney-client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed, including "CI" for any privilege in which a common interest is believed to avert waiver or result in privilege) and a unique document number/identifier, which need not be formatted as, or consecutive with, Bates numbers of produced documents (e.g., "Def_Priv_00001"). The Producing Party shall provide an itemized log containing separate entries for each document with the exception of multiple email messages in the same email string. Email strings can be logged as an inclusive string, but the withholding party must provide all senders and recipients of all emails in the withheld string. The parties agree to discuss in good faith the option to use categorical privilege logging for some or all withheld documents (such as called for by the "Facciola-Redgrave Framework." *See* Hon. John M. Facciola & Jonathan M. Redgrave, Asserting and Challenging Privilege Claims in Modern Litigation: The Facciola-Redgrave Framework, 4 Fed. Ct. L. Rev. 19,

45 (2009)).

      3.    The Parties will meet and confer in good faith to try to agree on the deadline or deadlines for the Parties to exchange privilege logs.

## IV.   **MODIFICATION**

      This Protocol may be modified by further agreement in writing by the Parties hereto or by the Court for good cause shown.

**Approved and So Ordered this _____ day of July, 2019.**

BY THE COURT:

_____
Honorable Michael M. Baylson

**ATTORNEYS FOR PLAINTIFF**
**LONTEX CORPORATION**

By:  /s/ Ben L. Wagner
Ben L. Wagner (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092

Andrew D. Skale (admitted *pro hac vice*)
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130

Michael B. Dubin, Esq.
SEMANOFF ORMSBY GREENBERG &
TORCHIA, LLC
2617 Huntingdon Pike
Huntingdon Valley, PA 19006

Date:  July 15, 2019

**ATTORNEYS FOR**
**DEFENDANT NIKE, INC.**

By:  /s/ Gina L. Durham (with consent)
Gina L. Durham (admitted *pro hac vice*)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105

Frank W. Ryan (admitted *pro hac vice*)
Marc E. Miller (admitted *pro hac vice*)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 100201

Darius C. Gambino
Ben C. Fabens-Lassen
DLA PIPER LLP (US)
1650 Mark Street, Suite 5000
Philadelphia, PA  19103

Date:  July 15, 2019

39460613v1

# Exhibit A - Document Production Format

Both electronically stored information ("ESI") and hard copy paper files should be produced in image format with the exception of certain ESI formats identified in the technical specifications below. Images shall be endorsed with a bates number at the page level accompanied with text files containing the searchable text and a delimited data load file containing associated document information and metadata for each document. The original native files shall be preserved.

ESI shall be collected in a manner that preserves metadata to the extent reasonably possible. ESI shall be produced in a format that is reasonably usable to the same extent as the original native file.

Using good faith efforts, duplicates shall be removed from all ESI productions in a manner that does not break up document families – in other words, emails shall be treated as duplicates only if they are identical both in their bodies and in all their attachments, and an email attachment shall not be treated as a duplicate merely because an identical copy of the document exists as a separate file. ESI duplicates shall be identified by using industry standard MD5 or SHA-1 algorithms to create and compare hash values for exact matches only. A duplicate custodian field ["DupCustodian"] shall be provided that identifies each custodian from whom the document was collected, including any custodians' whose copy was removed because it was identified as a duplicate. Any duplicate ESI that is not produced shall be preserved.

Specific technical production format details:

- Native ESI and paper shall be converted to black and white 300 dpi TIF format image files with Group IV compression and one TIF file per page. Upon written request, a producing party shall produce color images for selected documents provided the volume of documents selected for color production is reasonable. Documents produced in color shall be produced as JPEG images, 200 dpi or higher and 24-bit color depth. Each color document image file shall be named with the unique Bates Number of the first page of the document followed by the file extension "JPG";

- For documents whose native format is a spreadsheet, database, audio or video, the original native files should be produced in addition to a single page TIF placeholder for each document. The placeholder should be endorsed with "Native Format Document," and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that document. Any confidentiality or other designations stamped on the placeholder for such a document shall apply to the entire native file and its contents;

- For documents whose native format is MS PowerPoint, the original native files and single page black and white Group IV TIF format image files shall be produced (with any comments shown). The produced native file should be named with the beginning Bates number assigned to that document. Any confidentiality or other designations stamped on the image(s) for such a document shall apply to the entire native file and its contents;

- Notwithstanding the above, original native files need not be produced for documents produced with redacted images, regardless of original native file format;

- Each image file shall be named with its unique Bates number and branded with the Bates number and confidentiality designation (if any) on the face of the image in a location that does not cover up any of the document's original text or images;

- One text file per document which contains searchable text for the document shall be provided for all ESI and scanned paper documents. Extracted full text shall be provided for ESI, and OCR text shall be provided for scanned paper. OCR generated text should only be used for ESI if extracted text is not available or if the document has been redacted. Text files shall be named with the beginning Bates number of the corresponding document and a path to the text file within the production should be provided in the data load file;

- An image identification file shall be provided containing a row of information for every image included in the production. The format of the file should be industry standard IPRO format (LFP), Concordance Image format (OPT) or other delimited file format using common ASCII (American Standard Code for Information Interchange) characters for field identification that includes one row of information for each image with fields for image Bates number, relative path to the image, image filename, page number, and document start identifier to designate the first page of a document;

- All document information and metadata for each document shall be produced in a delimited data load file with one row for each document produced and shall include the document information and metadata identified in the table below to the extent it is available. The format of the file shall be industry standard Concordance DAT file format or a delimited text file that uses ASCII character delimiters as follows: Field Delimiter = ""ASCII (020), Text Quote = "þ" ASCII (254), Multi-Entry = ";" ASCII (059)

<u>Document Information and Metadata To Be Produced</u>

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| ProdBeg | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| ProdEndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodian | Text | Name of person the document | Name of person the document was collected from | Name of person the document was collected from |

| | | was collected from | | |
|---|---|---|---|---|
| DupCustodian | Text – paragraph Separate entries with ";" | | All names of people the document was collected from even if removed from production as a duplicate | All names of people the document was collected from even if removed from production as a duplicate |
| Folder | Text | | File path/folder structure for the original native file as it existed at the time of collection | File path/folder structure for the original native file as it existed at the time of collection. Should include full path and folder locations of email container files such as PST and NSF and the internal path of the email within those files |
| DeDuped_Paths | Text | | All file path/folder structure for the original native file as it existed at the time of collection even if removed from production as a duplicate | All File path/folder structure for the original native file as it existed at the time of collection even if removed from production as a duplicate. Should include full path and folder locations of email container files such as PST and NSF and the internal path of the email within those files |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph | | | Copied recipients |

| | | | | |
|---|---|---|---|---|
| | Separate entries with ";" | | | |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| Date_Sent | Date (mm/dd/yy yy) | | | Date message sent |
| Time_Sent | Time (hh:mm:ss) | | | Time message sent |
| Date_Rcvd | Date (mm/dd/yy yy) | | | Date message received |
| Time_Rcvd | Time (hh:mm:ss) | | | Time message received |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |
| Date_Created | Date/Time (mm/dd/yy yy) | | Date file was created | |
| Date_LastMod | Date/Time (mm/dd/yy yy) | | Date file was last modified | |
| Title | Text - paragraph | | Title from document metadata | |
| Author | Text - paragraph | | Document author from metadata | |
| Company | Text - paragraph | | Document company or organization from metadata | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| MD5 Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| Time Zone Field | Text | | Time Zone used to process data | Time Zone used to process data |

39460613v1

| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
|---|---|---|---|---|
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
| Redacted | Text | "Yes" where redacted; Null where not redacted | "Yes" where redacted; Null where not redacted | "Yes" where redacted; Null where not redacted |

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

|  |  |
|---|---|
| **In re:** | ) |
|  | ) |
| **SUBPOENA ON HIBBETT SPORTS, INC., a** | ) |
| **non-party in a pending civil action before the** | ) |
| **United States District Court for the Eastern** | ) **MISC NO. _____** |
| **District of Pennsylvania entitled** *LONTEX* | ) |
| *CORPORATION V. NIKE, INC.,* **Case No.** | ) |
| **2:18-cv-05623-MMB** | ) |
|  | ) |

## AFFIDAVIT OF DAVID BENCK IN SUPPORT OF
## NON-PARTIES HIBBETT SPORTS, INC. AND HIBBETT SPORTING GOODS, INC.'S
## MOTION TO QUASH, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

**STATE OF ALABAMA**          )

**COUNTY OF JEFFERSON**          )

Before me, the undersigned authority, personally appeared David Benck, who is known to me, and being by me duly sworn, deposes and says as follows:

1.      I am David Benck.  I am Vice President and General Counsel of Hibbett Sporting Goods, Inc. ("Hibbett").  I make this affidavit in support of *Non-Parties Hibbett Sports, Inc. and Hibbett Sporting Goods, Inc.'s Motion to Quash, or, in the Alternative, for a Protective Order* (the "Motion to Quash")[1].

2.      I am one of the persons who has custody and control of Hibbett's business records (including access to electronically stored data) concerning Hibbett's relationship with Nike, Inc ("Nike").  These records were made at or near the time of the event recorded by a person with knowledge of the event and charged with the responsibility for recording such events.  These records are kept in the ordinary course of Hibbett's regularly conducted business activity, which

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion to Quash.

is Hibbett's customary practice.  All facts set forth herein are either (a) facts of which I have personal knowledge or (b) an accurate summary of Hibbett's business records based on my communications with individuals in various Hibbett departments.

3.     Hibbett is a Delaware corporation with its principal address located at 2700 Milan Parkway, Birmingham, Alabama, 35211.  Hibbett is wholly owned by Hibbett Sports, Inc., a holding company with no assets other than Hibbett.  Hibbett Sports, Inc. has no records or information regarding Hibbett's relationship with Nike.

4.     Most, if not all, of the documents and information requested in the Subpoena, to the extent they exist, should be in the possession, custody, or control of the Nike or its affiliated companies.  Any documents and files that Hibbett may have that are responsive to the Subpoena are stored either electronically or at Hibbett's headquarters in Birmingham.

5.     Hibbett is a sporting goods company.  Nike has been a supplier to Hibbett for decades.

6.     Hibbett is not a party to the Underlying Litigation.

7.     On December 3, 2019, Lontex served the Subpoena on Hibbett.

8.     If required to produce all documents requested in the Subpoena, Hibbett estimates that it would require at least twenty-seven (27) individuals from across groups within its marketing, merchandising, and operations departments to research Hibbett's documents and information for responsiveness to the Subpoena, which would consequently limit these individuals' ability to perform their daily business responsibilities.

9.     Hibbett estimates that the research effort will take weeks, if not months, and potentially cost tens of thousands of dollars, in order to search thousands of records for responsive documents.  Further, given that the holiday season is the busiest time of the year for Hibbett, such

research could not begin until January 6, 2020 because the Hibbett employees who would research the document requests could not be diverted from their responsibilities until such time.

FURTHER AFFIANT SAYETH NAUGHT.

Dated this the 17th day of December, 2019.

David Benck
Affiant

SWORN AND SUBSCRIBED BEFORE ME,
This the 17th day of December, 2019.

Notary Public
My Commission Expires: January 4, 2023

Twila Dothard
Notary Public
Alabama, State at Large